THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:09-CR-68-1FL

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM & RECOMMENDATION** |
| KEITHON DERNARD SOUTHERLAND, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court on Defendant's motion to suppress physical evidence obtained during a warrantless search of Defendant's vehicle on October 25, 2008. [DE-20.] The government filed a Response [DE-23] and this Court conducted an evidentiary hearing on October 20, 2009, to further develop the record. At the hearing, the Court heard the testimony of Sargeant R.V. Dawson, of the Wilmington Police Department, who conducted the search and arrest. Accordingly, this matter is ripe for review.

I.  **Statement of the Facts**

The facts are not disputed. Sargeant Dawson, who was a Corporal with the Wilmington Police Department at the time of Defendant's arrest (and who is referenced hereinafter as "Officer Dawson"), testified that at around 11:00am on October 25, 2008, he responded to a call about a breaking and entering and larceny on Racine Drive in Wilmington, N.C. With him was Officer R.W. Gilbert, also of the Wilmington Police Department. When Officer Dawson arrived, the owner of the residence, Thomas Joseph Marino, reported that he had been walking his dog and had left the door to his home unlocked in his absence. Upon return, he discovered that a laptop and a cell phone had been stolen. Officer Dawson testified that the victim was unsure as

1

to whether the laptop and cell phone were the only things stolen from his house. There was indeed no evidence of forced entry at Marino's residence. The victim's son, Thomas Dominic Marino, who lives in New York, was able to track the location of his father's phone via GPS over the internet. For the next two hours, Officers Dawson and Gilbert drove "all over the city," tracking the phone based on the information the victim's son was receiving from the phone's GPS feature. During this time, they spoke frequently to the victim's son as he continued to inform them as to the changing whereabouts of the phone.

After about two hours, GPS tracking showed that the phone was no longer moving and was located near Henry Street. Marino's son identified the location where the phone was resting as 401 Henry Street, and Officer Dawson drove to that location. During the two hours of intermittent conversations with the Wilmington Police officers, Marino's son mentioned only the stolen laptop and cell phone, and did not mention any other items that had been stolen.

As the officers approached 401 Henry Street, they saw a silver Cadillac backing out of the driveway. The Cadillac stopped as the officers drew near. The driver got out and tossed the keys to a man later identified as the Defendant. After exiting the squad car, Officer Dawson looked into the windows of the Cadillac and saw a cell phone in the center console that was similar in appearance to the stolen phone.[1] At this point, Dawson did not touch the vehicle. Instead, he continued to look through the windows of the car and saw a laptop computer sitting closed on the back seat.

The Defendant became agitated and asked Officer Dawson "what's the problem?" Officer Dawson asked the Defendant for permission to ascertain that the laptop was not stolen, and the Defendant assented. At first, the Defendant himself tried to get into the vehicle to

---

[1] The cell phone was relatively new and Marino still had the original packing, which had a picture of the phone on the outside. Marino showed Officer Dawson this picture.

2

retrieve the laptop, but Officer Edwards interposed himself between the car and the Defendant. The Defendant did not come in contact with the car at this point or at any later point during the search and arrest. He told the officers that the Cadillac belonged to his girlfriend. Officer Dawson retrieved the laptop from the Cadillac. While Officer Dawson was retrieving the computer, Defendant was taken into police custody and was searched and patted down.

Officer Dawson opened the laptop and saw a login screen indicating that it indeed belonged to the victim. At this point, the Defendant was arrested for possession of stolen property, cuffed, and placed in the squad car. Officer Dawson then retrieved the cell phone out of the Cadillac. After retrieving the phone, Dawson continued searching the vehicle  The search yielded a magazine and a handgun, as well as receipts with the Defendant's name on them. Dawson stated that it was his understanding that the magazine fit the handgun discovered during the search.

## II. Discussion

Defendant is being charged with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. His motion to suppress claims that the search that resulted in the discovery of the firearm and loaded magazine was in violation of the restrictions on the search incident to arrest exception to the Fourth Amendment's proscription of unconstitutional searches and seizures, based on Arizona v. Gant, 129 S.Ct. 1710 (2009). Accordingly, he claims that the evidence discovered after his arrest should be suppressed. The Court disagrees.

### A. Probable Cause

Defendant bases his argument for suppression on the fact that the gun and loaded magazine that were discovered while he was being arrested for possession of stolen items, and which led to the charge of illegal possession of a firearm by a felon, were discovered during an

3

improper search incident to arrest. However, the Court need not even evaluate whether the search of the Cadillac at 401 Henry Street, Wilmington, meets current constitutional standards of search incident to arrest, because Officer Dawson had probable cause to search the vehicle. In order for an officer to conduct a warrantless search of a vehicle, the officer must have probable cause. U.S. v. Muti, 2009 WL 3296091, at *2 (E.D.N.C. Oct. 13, 2009); see U.S. v. Wyche, 907 F. Supp. 127, 130 (D. Md. 1995) (holding that where police have probable cause to believe that a vehicle contains the fruits of a crime, they may search the vehicle without a warrant). Probable cause exists when the "totality of the circumstances" – a term of art that in this context is based on the facts and circumstances in the officer's knowledge – would convince a "person of reasonable caution" that an offense is being committed. Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000); see Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir. 2002). In the context of a vehicle search, a warrantless search is permissible if the police "have probable cause to believe contraband or evidence is contained." Id.; see U.S. v. Hudson, 497 F. Supp. 2d 771, 777 (W.D. Va. 2007); U.S. v. Rochelle, 2009 WL 382745, at *7 (M.D.N.C. Oct. 12, 2009). Probable cause to believe a car is carrying contraband justifies a search of the entire vehicle (and any containers therein). U.S. v. Nixon, 2008 WL 5392095, at *4 (W.D.N.C. December 18, 2008); U.S. v. Carter, 2007 WL 1052592, at *3 (E.D. Va. April 5, 2007). Here, Officer Dawson saw items that matched the descriptions of the stolen property through the window of the vehicle. According to Dawson's testimony, although the cell phone and laptop were the only two objects identified initially as stolen, the victim was not sure whether anything else had been taken. Officer Dawson reasonably believed it possible that other items, in addition to the computer and phone, had been stolen, and therefore he continued to search the vehicle to see if there was more contraband inside. Having probable cause to believe that additional stolen items might be in the

Cadillac, Officer Dawson was justified in continuing his search after finding the two items identified by the victim.

**B. Search Incident to Arrest**

Putting aside probable cause as the justification for Officer Dawson's warrantless search of the Cadillac in which the stolen goods were in plain sight, the firearm and magazine found in the vehicle would also be admissible because they were discovered during a valid search incident to an arrest. It is well settled that the Fourth Amendment prohibits warrantless searches subject only to a few well-delineated exceptions. U.S. v. Williams, 2009 WL 2413833 (N.D.W.Va. July 31, 2009). Search incident to arrest is one of these exceptions. Defendant argues that since the officers knew that only a laptop and a cell phone were stolen, and since the Defendant was handcuffed and would not have been able to access the Cadillac, once the phone and computer were found, any further search was a violation of the Defendant's constitutional rights.

As the Court noted above, an officer who has probable cause to believe that a vehicle contains contraband may search an entire vehicle. Nixon, 2008 WL 5392095 at *4. Discovery of contraband in the passenger compartment of a car can provide an officer with sufficient probable cause to believe he will find additional contraband there. Carter, 2007 WL 1052592 at *3. In Carter, discovery of marijuana in the backseat of the car was considered to have provided the officer on duty with sufficient probable cause to search the trunk of the car. In this case, Officer Dawson did not attempt to enter the trunk of a car, or search in closed containers, but rather continued his search for further contraband in the passenger compartment based on his discovery of stolen goods. This case provides an excellent illustration of the interplay between search incident to arrest and probable cause. Where a search incident to arrest is constitutionally

5

valid, and yields contraband, an officer may continue his search of the vehicle to find further contraband *because* he now has probable cause. See Nixon, 2008 WL 5392095 at *4.

The Defendant uses the Supreme Court's latest word on the issue, Arizona v. Gant, 129 S.Ct. 1710 (2009), as a basis for suppressing the evidence, arguing first that Defendant was secured in the police car and therefore could not access weapons or evidence, and second that the police should have stopped searching after removing the laptop and cell phone. Gant states that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of search or it is reasonable to believe that the vehicle contains evidence of the offense of the arrest." 129 S.Ct. at 1723-24. While Gant has indeed narrowed the earlier search incident to arrest doctrine, as discussed below, Gant does not speak to limiting an officer's right to search the passenger compartment of a vehicle once he has probable cause that he will find contraband there. Gant does not stand for the proposition that once an officer has discovered "some" evidence, or "enough" evidence, of a crime, he must call off the search.

In this case, Defendant's car was searched for evidence of the very crime for evidence of which Officer Dawson was searching. Dawson was looking for stolen goods in the place where he discovered stolen goods.

### C. Retroactivity and the Good Faith Exception

Even if the search were invalid under either the probable cause or search incident to arrest theories, the search was allowable under the good faith exception to the exclusionary rule. Defendant applies the new, tighter Gant approach to searches incident to arrest, even though the alleged violation of the Fourth Amendment took place prior to the Gant ruling. The rule of the day in October, 2008, was New York v. Belton, 453 U.S. 454 (1981), which, before the Supreme

6

Court clarified its holding in Gant, may have permitted a vehicle search incident to arrest even if there were "no possibility the arrestee could gain access to the vehicle at the time of the search." Gant, 129 S.Ct. at 1713. Defendant argues that police action should be judged according to the new Gant standard.

The Supreme Court has recognized that retroactive application of constitutional doctrine is appropriate where the new doctrine is meant to overcome some aspect of the criminal trial system that has been found to impair truth-gathering. U.S. v. Peltier, 422 U.S. 531, 535 (1975), citing Williams v. U.S., 401 U.S. 646, 653 (1971). However, where the policies underlying the exclusionary rule do not justify its retroactive application, new interpretations of the exclusionary rule need not be applied retroactively. Id. at 534-35. For example, courts have not considered that the policies underlying the exclusionary rule justify its retroactive application in situations where an officer believes *in good faith* that evidence he is in the process of seizing will be admissible at trial, but the officer is operating according to an older or recently clarified set of standards. Id. at 537. Even if we read Gant as prohibiting search of the vehicle after the removal of the cell phone and laptop and after the arrest of Defendant, the further contraband located in the vehicle would still be admissible. Officer Dawson was acting in good faith and in accordance with what he believed to be the law when he continued to search Defendant's Cadillac after finding the computer and cell phone. The Court does not believe that Gant clarified Belton to the extent that what would have been an appropriate warrantless search in October, 2008 is no longer appropriate a year later. But even if this were the case, the good faith of Officer Dawson obviates a retroactive application of Gant.

**III. Conclusion**

For the reasons set forth above, the court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 13th day of November 2009.

DAVID W. DANIEL
United States Magistrate Judge